**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CHRISTOPHER MIELO, | ) | Civil Action No. 14-1036 |
|     Plaintiff, | ) | |
| | ) | United States District Judge |
|     v. | ) | Arthur J. Schwab |
| | ) | |
| | ) | |
| | ) | United States Magistrate Judge |
| BOB EVANS FARMS, INC., | ) | Cynthia Reed Eddy |
|     Defendant. | ) | |

## REPORT AND RECOMMENDATION

### I.     RECOMMENDATION

For the reasons set forth below, it is respectfully recommended that Plaintiff's Motion for Class Certification  (ECF No. 19) be denied and that Defendant's Motion to Strike (ECF No. 29) be granted.

### II.     REPORT

**Procedural History**

Plaintiff,  Christopher Mielo ("Plaintiff" or "Mielo"), brings this  action  individually and on behalf of all others similarly situated against Bob Evans Farms, Inc. ("Defendant" or "Bob Evans"), alleging violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*., (the "ADA") and its implementing regulations.  Specifically, Mielo alleges that the various properties owned and managed by Bob Evans are not fully accessible to and independently usable by individuals who use wheelchairs for mobility, as he does, because of excessive slopes in purportedly accessible parking spaces and access aisles to the building entrances.

1

Presently before the Court is Plaintiff's Motion for Class Certification and brief in support (ECF Nos. 19 and 20), Defendant's brief in opposition (ECF No. 31), Plaintiff's Reply Brief (ECF No. 38), Defendant's Sur-Reply (ECF No. 41), and Plaintiff's Notice of Supplemental Authority (ECF No. 45). Mielo has submitted two Declarations in support of his motion: (i) the Declaration of R. Bruce Carlson, counsel for Plaintiff, with attached photos of conditions in the accessible parking spaces and access aisles "at a representative sample of Defendants' parking facilities" (Exhibit A) and the Firm Resume for Carlson Lynch Sweet & Kilpela, LLP ("Carson Lynch") (Exhibit B); and (ii) the Declaration of Quinn Riordan (ECF No. 40), an investigator who personally visited various facilities owned and/or operated by Bob Evans and who also instructed Carlos Diaz, another investigator, to visit and investigate the conditions in the parking lots at several Bob Evans locations.

Defendant has submitted two (2) Declarations in support of its position: (i) the Declaration of Mark A. Knueve, counsel for Bob Evans (ECF No. 32), with attached excerpts from the depositions of Mielo (Exhibit A), Quinn Riordan (Exhibit B), and Carlos Diaz (Exhibit C); and (ii) the Declaration of Mark G. Baldwin (ECF No. 33), Vice President, Design, Construction and Facilities for Bob Evans.

Also pending is Defendant's Motion to Strike or in the alternative Motion to Disregard, Paragraph 2 and Exhibit A of the Declaration of R. Bruce Carlson. (ECF No. 29). Plaintiff was to respond to the Motion to Strike by January 9, 2015. (See Text Order of December 12, 2014.) To date, Plaintiff has not filed a response nor has he requested an extension of time in which to do so.[1]

---

[1] However, it appears that the Declaration of Quinn Riordan (ECF No. 40), filed on January 9, 2015, may have been filed in an attempt to cure the deficiencies in the Carlson

In his Complaint, Mielo states that he has utilized Bob Evans' facilities in the past and intends to patronize its facilities in the future, but that he will be denied full access and will be unable to fully use Bob Evans' facilities unless the alleged architectural barriers are removed. Compl. (ECF No. 1, ¶ 3). In the past three years, Mielo has once personally visited Defendant's property located at 4714 McKnight Road in Pittsburgh, Pittsburgh, and twice personally visited Defendant's property located in Harmarville, Pittsburgh. According to Mielo, at the McKnight Road facility, he parked his vehicle at the restaurant, put his wheelchair on the parking lot surface, and it began to roll away. Mielo testified that he does not have specific plans to return to the McKnight Road restaurant, but that he might do so because he has family that shops in the nearby mall. He also testified that he could not recall encountering any ADA accessibility issues at the Harmarville restaurant.

The evidentiary record indicates that Quinn Riordan ("Riordan") and Carlos Diaz ("Diaz"), investigators / employees of Carlson Lynch law firm, examined on Mielo's behalf, multiple retail locations owned by Defendant, and found that 15 of 16 Bob Evans restaurants in Pennsylvania, Ohio, West Virginia, and Maryland had maximum slopes in their respective parking lots not in compliance with the ADA, some of which also were alleged to have inadequate marking and no van accessibility. Neither of these investigators were civil engineers nor architects. Riordan testified that when he and Diaz reviewed a restaurant's ADA parking

Declaration, as noted in Defendant's Motion to Strike. It will be recommended, therefore, that the Motion to Strike be granted. The Court will disregard the challenged material, but will nevertheless consider the declarations and attachments of deposition testimony and photographs and measurements of parking lots to Plaintiff's reply brief as a supplement to his motion to certify a class. These declarations are based on personal knowledge by co-counsel Sweet (ECF No. 39) and by counsel's investigator (ECF No. 40). Given the liberal pleading allowances contemplated by the Federal Rules of Civil Procedure, the Court deems it appropriate to consider these materials, although Plaintiff could have done well to attach such evidence to his motion in the first instance.

field, they took measurements until they found a slope that they believed exceeded the ADA's provisions. Riordan and Diaz testified, *inter alia*, that they found at least two (2) Bob Evans restaurants with no sloping issues, that the parking lots at each restaurant were different, and that it would be impossible to determine whether excessive sloping existed at a particular restaurant without conducting an individual inquiry.

In his Motion for Class Certification, Mielo seeks to certify, pursuant to Federal Rule of Civil Procedure 23(a) and (b)(2), a nationwide class of individuals with qualified mobility disabilities, who have attempted, or will attempt, to access Bob Evans restaurants:

> All persons with qualified mobility disabilities, who were denied the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of any Bob Evans restaurant location in the United States on the basis of disability because the slopes of accessible parking spaces and/or access aisles exceeded the ADA's maximum slope requirements.

Pl's Mot. for Class Certification (ECF No. 19 at 1).[2] Defendant vigorously contests certification of a class on every element of Rule 23(a) and Rule 23(b)(2). Defendant argues that Mielo cannot satisfy the requirements of Rule 23 because differences between the parking lots of various Bob Evans restaurants defeat Plaintiff's attempt to show numerosity, commonality, and typicality under Rule 23. Specifically, Defendant argues that its stores are all unique, there is no common design or pattern, and many of the parking lots are not deficient, even by Plaintiff's own investigators' findings. In addition, Defendant maintains that the proposed class representative, Mielo, cannot adequately represent the class because he is subject to unique defenses. Defendant

---

[2]     While the Complaint refers to "wheelchair users," the class definition posed in the motion for class certification is broader and would apply to persons with qualified "mobility disabilities," which appears to include people using wheelchairs (manual or power), electric scooters, walkers, cane, crutches or braces. *See* ADA requirements: Wheelchairs, Mobility Aids, and Other Power-Driven Mobility Devices, dated January 31, 2014 at www.ada.gov/opdmd.htm.

further asserts that nationwide injunctive relief cannot be granted in a single order with respect to the class as a whole. The Court will address Defendant's arguments seriatim.

**Standard of Review**

To obtain class certification, Plaintiff must meet all four requirements of Federal Rule of Civil Procedure 23(a) and at least one part of Federal Rule of Civil Procedure 23(b). *Baby Neal v. Casey*, 43 F.3d 48, 55 (3d Cir. 1994) (citing *Wetzel v. Liberty Mutual Ins. Co.*, 508 F.2d 239 (3d Cir. 1975)). In determining whether a class will be certified, the substantive allegations of the complaint must be taken as true. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78 (1974). The Court is not, however, limited to the pleadings. *See Newton v. Merrill Lynch, Pierce Fenner & Smith, Inc.*, 259 F.3d 154, 168–69 (3d Cir. 2001) ("In reviewing a motion for class certification, a preliminary inquiry into the merits is sometimes necessary to determine whether the alleged claims can be properly resolved as a class action.").

As the United States Supreme Court stated in *Wal-Mart Stores, Inc. v. Dukes*, ––– U.S. ––––,131 S. Ct. 2541, 2551-52 (2011), the "rigorous analysis" demanded in reviewing a motion for class certification "will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped. [T]he class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." (citing *General Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 160 (1982)). Moreover, when doubt exists concerning certification of the class, the court should err in favor of allowing the case to proceed as a class action. *Eisenberg v. Gagnon*, 766 F.2d 770, 785 (3d Cir. 1985). However, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent —but only to the extent— that they are relevant to determining whether Rule 23 prerequisites for class certification are

satisfied." *Agmen Inc. v. Connecticut Retirement Plans and Trust Funds,* —— U.S. ——, ——
133 S.Ct. 1184, 1194–95 (2013).

### Discussion

The Court now turns to the issue of class certification.  As stated *supra*, to warrant certification, a "class action must satisfy the four requirements of Rule 23(a) and the requirements of either Rule 23(b)(1), (2), or (3)." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 590 (3d Cir. 2012). To meet the requirements of Rule 23(a): "(1) the class must be 'so numerous that joinder of all members is impracticable' (numerosity); (2) there must be 'questions of law or fact common to the class' (commonality); (3) 'the claims or defenses of the representative parties' must be 'typical of the claims or defenses of the class' (typicality); and (4) the named plaintiffs must 'fairly and adequately protect the interests of the class' (adequacy of representation, or simply adequacy)." *In re Cmty. Bank of N. Va.*, 622 F.3d 275, 291 (3d Cir. 2010) (quoting Fed.R.Civ.P. 23(a)(1)-(4)).

Plaintiff must affirmatively demonstrate compliance with Rule 23. *Wal–Mart Stores, Inc. v. Dukes*, -- U.S. ---, 131 S.Ct. at 2551–52.  Rule 23 is not a pleading standard; each requirement must be "satisf[ied] through evidentiary proof." *Comcast Corp. v Behrend,* —— U.S. ——, —— – ——, 133 S.Ct. 1426, 1432 (2013). "Factual determinations necessary to make Rule 23 findings must be made by a preponderance of the evidence. To certify a class the court must thus find that the evidence more likely than not establishes each fact necessary to meet the requirements of Rule 23." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 320 (3d Cir. 2008) (citing *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc*., 546 F.3d 196, 202 (2d Cir. 2008)).  "[T]he decision to certify a class calls for findings by the court, not merely a 'threshold showing' by a party, that each requirement of Rule 23 is met." *Id*. at 307.

1. Rule 23(a)(1):  Numerosity

The numerosity requirement is satisfied only where, looking at the totality of the circumstances, joinder is sufficiently impracticable. *Baby Neal*, 43 F.3d at 56. Our appellate court has held that "[n]o minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001).  The court must find based on a preponderance of the evidence that plaintiff has met the numerosity requirement.  *Hydrogen Peroxide,* 552 F.3d at  307.  Rule 23 does not require a plaintiff to offer direct evidence of the exact number and identities of the class members, but in the absence of direct evidence, a plaintiff must show sufficient circumstantial evidence specific to the problems, parties, and geographic areas actually covered by a class definition to allow the court to make factual findings respecting numerosity.  *Marcus,* 687 F.3d at 596.  Mere speculation is insufficient.  *Id.*  Only then may the court rely on "common sense" to forgo precise calculations and exact numbers. *Id.* (citing *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 468, 510 (D.N.J. 1997)).

Plaintiff devotes approximately two paragraphs of his brief to numerosity and relies on terse census figures as evidence of numerosity:

> Courts regularly rely upon inferences drawn from statistical census data regarding specific types of disabilities when assessing numerosity in a proposed barrier removal class action.  (citation omitted.) There are roughly 30.6 million Americans aged 15 years and older with ambulatory limitations; approximately 3.6 million people use wheelchairs; 11.6 million people use a cane, crutches, or walker to assist with mobility.  See Brault, Matthew W., "Americans with Disabilities: 2012," Current Population Reports, P70-131, U.S. Census Bureau, Washington, DC. 2012, at p. 8.  A common sense extrapolation from this U.S. Census data demonstrates that numerosity is easily satisfied in this action.  There are likely hundreds, if not thousands, of consumers with mobility impairments

who are regularly customers at one or more of Defendant's restaurants in Pennsylvania, Ohio, and West Virginia.

. . .

Moreoover, the size of the class is not the only relevant factor in determining that joinder is impracticable. (citation omitted.) "[T]he geographical diversity of class members, the ability of individual claimants to institute separate suits, and whether injunctive or declaratory relief is sought should be considered in determining impracticability of joinder. (citation omitted.) Here, potential class members have no financial incentive to pursue individual actions given that only injunctive and declaratory relief are available under Title III of the ADA. As noted, the class is geographically dispersed, as Defendants (sic) have locations throughout Western Pennsylvania, West Virginia and Ohio. . . .

Pl's Memo. Of Law at 9. [3] Plaintiff's reply memorandum includes a statistical breakdown of mobility-impaired persons in each of the 19 states in which Defendant operates, with a range of 61,200 (Delaware) to 1,356,700 (Florida); Pennsylvania had, as of 2012, 863,800 mobility-impaired citizens; and Ohio, Defendant's principle place of business, had 816,600. See Pl's Reply Memo. at 16. (ECF No. 38.) The other states investigated by Plaintiff's counsel's investigators, West Virginia and Maryland, had approximately 198,700 and 311,700 mobility-impaired citizens, respectively. *See* ECF No. 38 at 21, n. 17.

Defendant argues that Mielo offers no evidence of numerosity, but rather only offers speculation and conjecture. The Court finds that Defendant's argument has merit.

Mielo does not specify or even forecast the number of potential Class Members, other than speculate that "[t]here are likely hundreds, if not thousands, of consumers with mobility impairments who are regularly customers at one or more of Defendant's restaurants in

---

[3] Plaintiff provides a bit more specific information with regard to Pennsylvania: "In 2012, there were 863,000 individuals age 16 and over with ambulatory disabilities in the Commonwealth of Pennsylvania alone." Pl's Memo at 9, n. 5.

Pennsylvania, Ohio, and West Virginia." The Court of Appeals for the Third Circuit has made clear that such speculation is not an evidentiary preponderance. *Marcus*, 687 F.3d at 596; *Hayes v. Wal-Mart Stores, Inc.,* 752 F.3d 349, 356 (3d Cir. 2013); *Sheller v. City of Phila.,* 288 F.R.D. 377, 383 (E.D. Pa. 2013) (holding that under *Marcus*, speculative and conclusory assertions that the Philadelphia Parking Authority stopped and towed thousands of people, some of whom were not guilty of the charged traffic offenses, was insufficient to show numerosity).

Mielo has not provided any specific census data concerning the number of qualified individuals with mobility disabilities nationwide who are likely to patronize Defendant's business. Rather, Mielo has identified only one customer with a mobility impairment (himself), and that sole customer encountered an ADA accessibility issue at a single Bob Evans restaurant. Furthermore, there is no dispute that at least two Bob Evans restaurants have no sloping issues and that the parking lots are different at each of the Bob Evans restaurants.[4]

For all these reasons, the Court cannot find based on a preponderance of the evidence that Plaintiff has met the numerosity requirement. *Hydrogen Peroxide*, 552 F.3d at 307.

2. Rule 23(a)(2): Commonality[5]

Even assuming the requirements of Rule 23(a)(1) were met, Plaintiff has not met his burden under Rule 23(a)(2). While numerosity addresses the necessity of certification, the last three requirements, commonality, typicality, and adequacy, help the Court to "determine whether the class action can be maintained in a fair and efficient manner." *Baby Neal*, 43 F.3d at 55. The

---

[4]     According to Mielo, at the end of fiscal 2014, Bob Evans owned the real estate for 480 of its restaurant locations and leased the real estate for the remaining 81 locations. *See* Bob Evans Farms, Inc., Annual Report (Form 10-K), at 29 (July 9, 2014). Pl's Memo. at 1, n.1.

[5]     Because Mielo has failed to establish numerosity under Rule 23(a)(1), the Court need not consider whether the other 23(a) or (b)(2) requirements have been met. However, in an abundance of caution, the Court will address each of these requirements.

commonality requirement in Rule 23(a) "does not require an identity of claims or facts among class members; instead, [it] 'will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class.'" *Johnston v. HBO Film Management, Inc.*, 265 F.3d 178, 183 (3d Cir. 2001) (quoting *In re the Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 310 (3d Cir. 1998)). "Rule 23 does not require that the representative plaintiff have endured precisely the same injuries that have been sustained by the class members, only that the harm complained of be common to the class." *Hassine v. Jeffes*, 846 F.2d 169, 177 (3d Cir. 1988).

"[The] common contention … must be of such a nature that it is capable of class-wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke. 'What matters to class certification … is not the raising of common questions – even in droves – but rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation.'" *Dukes*, ⸺ U.S. ⸺, 131 S.Ct. at 2557 (citation omitted). In order for a "contention" to constitute a "common question," it must yield the same answer with respect to each member of the proposed class. *Id*. at 2551. *Dukes* has been acknowledged as requiring "a harder look at issues such as commonality." *Slapikas v. First Am. Title Ins. Co.*, 298 F.R.D. 285, 299 (W.D.Pa. 2014) (decertifying class where individual inquiries preclude final determination about commonality).

Even if there are droves of questions, the Court asks whether a classwide proceeding is capable of generating "common answers apt to drive the resolution of the litigation." *Dukes*, 131 S.Ct. at 2551 (quoting Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U.L.Rev. 97, 132 (2009)). Plaintiff now posits the common question as: whether Bob

Evans' "inadequate centralized corporate ADA compliance policy [] has resulted in widespread slope violations in the accessible parking areas at its stores." (Pl's Reply Br. ECF No. 38 at 7.) Mielo suggests the answer common to all class members is "yes." Thus, Plaintiff maintains, "the analysis must focus on the adequacy of that centralized policy and its impact on Class members (who, as mobility-disabled customers, are all affected similarly) - not on irrelevant differences in the composition of individual parking lots." *Id*.

As Defendant correctly points out, though, there is no common answer to the question posed by Plaintiff. Bob Evans' parking lots do not share a common design, and Mielo concedes that at least some Bob Evans parking lots comply with the ADA's sloping requirements. Mielo Depo. at 48; Riordan Depo. at 30-32; Diaz Depo. at 24-25. Diaz, moreover, testified in his deposition that based on his investigation, the parking lots at each restaurant were different and that it would be impossible to determine whether allegedly excessive sloping exists at a particular restaurant without conducting an individual inquiry into that restaurant.[6]

Further, the standard for ADA compliance differs with respect to accessibility of new construction and existing facilities. Congress imposed reasonable architectural standards for new construction and allowed for less costly measures for older facilities. *See* 28 C.F.R. § 35.151; 28 C.F.R. § 35.150(b)(1). Places of public accommodation and commercial facilities newly constructed for first occupancy after January 26, 1992, must be "readily accessible to and usable by" individuals with disabilities. 28 C.F.R. § 36.401(a)(1). Facilities that are altered

---

[6]     Quinn Riordan, the Director of ADA Investigations for Carlson Lynch, found 15 of 16 Bob Evans stores in Pennsylvania, Ohio, West Virginia, and Maryland had maximum slopes in their respective parking lots not in compliance with the ADA. *See* Declaration of Quinn Riordan (ECF No. 40). However, this sampling did not indicate the year the facility was built or whether the restaurant or parking lot was altered after January 26, 1992.

after January 26, 1992, must also meet this standard. Existing facilities that predate January 26, 1992, must meet the lesser "barrier removal standard," which requires the removal of barriers wherever it is "easily accomplishable and able to be done without undue burden or expense." 28 C.F.R. § 36.304(a). The ADA further requires that all places of public accommodation, including, but not limited to, those that predate the effective date of the ADA remove architectural barriers that are structural in nature, when it is readily achievable to do so. 42 U.S.C. § 12182(b)(2)(A)(iv). Applied to existing facilities, this "readily achievable" standard imposes a less rigorous degree of accessibility than for new construction or alterations. 28 C.F.R. part 36, App. B § 36.304. It is not in dispute that 121 of Bob Evans' 563 stores were built prior to 1992.

The differences in applicable law would require the Court to answer a variety of restaurant-specific questions. Before any common legal issues can be reached, each restaurant's parking lot must be individually examined, its date of construction or alteration determined, and then a determination must be made as to whether that parking lot meets the ADA standards applicable to the structure depending on the date of construction. *See Semenko v. Wendy's Int'l, Inc.,* 2013 WL 1568407 at *23 (W.D. Pa. April 12, 2013) (commonality not met because the necessary "highly individualized analysis . . . would require a number of individual mini-trials"); *Castaneda v. Burger King Corp.,* 264 F.R.D. 557, 568-69 (N.D. Ca. 2009) (finding that plaintiffs failed to meet the commonality requirement with respect to ADA claims against 92 restaurants because "each location has unique facilities" and "it would be necessary to have 92 trials within a trial.")

Significantly, the Court finds that Plaintiff has failed to make the case that Bob Evans has any common offending policies or design characteristics that called for common accessibility

barriers at its restaurants. Proving the existence and cause of accessibility barriers at each of the Bob Evans restaurants would be too fact-intensive and individualized to be effectively addressed in a single class action. The threshold question – whether any store in particular is out of compliance and if so, in what manner (running slope, cross slope, degree of deviation) – would have to be answered on a store-by-store basis, and the class members at the various 563 nationwide stores would not share common legal issues or salient core facts. Rather, the Court would have to conduct a mini-trial for each restaurant in order to determine if injunctive relief was appropriate. For these reasons, the Court cannot find based on a preponderance of the evidence that Plaintiff has met the commonality requirement. *Hydrogen Peroxide*, 552 F.3d at 307.

### 3. Rule 23(a)(3): Typicality[7]

Even assuming the requirements of Rule 23(a)(1) and (2) were met, Plaintiff has not met his burden under Rule 23(a)(3). In contrast to the commonality prong of the Rule 23(a)(2) test, which evaluates the sufficiency of the class, the typicality prong evaluates the sufficiency of the named plaintiff. *Baby Neal*, 43 F.3d at 56. The similarity between claims or defenses of the representative and those of the class does not have to be perfect. *Id.*, 43 F.3d at 56; *Hassine*, 846 F.2d at 177–78.

---

[7]     As the United States Supreme Court has recognized, "[t]he commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence. Those requirements therefore also tend to merge with the adequacy-of-representation requirement, although the latter requirement also raises concerns about the competency of class counsel and conflicts of interest." *Dukes*, -- U.S. --, 131 S.Ct. at 2551, n. 5 (quoting *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157-58 n. 13 (1982).

"Typicality entails an inquiry whether 'the named plaintiff's individual circumstances are markedly different or ... the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based." *Eisenberg v. Gagnon*, 766 F.2d 770, 786 (3d Cir.) ("'[t]ypical' is not identical"), *cert. denied sub nom. Weinstein v. Eisenberg*, 474 U.S. 946 (1985) (quoting *Weiss v. York Hospital*, 745 F.2d 786, 809 n. 36 (3d Cir.1984), *cert. denied*, 470 U.S. 1060 (1985) and *sub nom. Medical and Dental Staff of York Hospital v. Weiss*, 470 U.S. 1060 (1985)). *See Marcus*, 687 F.3d at 598; *Hassine*, 846 F.2d at 176-77. Ensuring that absent class members will be fairly protected requires the claims and defenses of the representative to be sufficiently similar not just in terms of their legal form, but also in terms of their factual basis and support. *See, e.g., E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395 (1977).

Factual differences between the proposed representative and other members of the class do not render the representative's claim atypical "if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members." *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 923 (3d Cir.1992) (internal quotations omitted). Complete factual similarity is not required; just enough factual similarity so that maintaining the class action is reasonably economical and the interests of the other class members will be fairly and adequately protected in their absence. *Newton*, 259 F.3d at 182–85; *Hassine*, 846 F.2d at 176–77.

"[D]iffering fact situations of class members do not defeat typicality under Rule 23(a)(3) so long as the claims of the class representative and class members are based on the same legal or remedial theory." *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988). The class's "common contention 'must be of such a nature that it is capable of classwide resolution—which

means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc.*, 725 F.3d 1213, 1218 (10th Cir. 2015) (quoting *Wal–Mart,* 131 S.Ct. at 2551). "The issue under Rule 23(a)(3) is not whether there has been a uniform failure to provide reasonable accommodation at all. Rather, it is whether the inaccessibilities experienced and accommodations sought by Plaintiffs are typical of those experienced and sought by putative class members generally." *Shields v. Walt Disney Parks & Resorts US, Inc.,* 279 F.R.D. 529, 551 (C.D. Cal. 2011).

In the instant case, Bob Evans argues that there are a number of obstacles which prevent the Court from finding that Plaintiff has met his burden under Rule 23(a)(3). The Court agrees with Bob Evans and finds its arguments compelling. As previously discussed, there is no common design or architectural feature with respect to Bob Evans parking lots; therefore, there is no typical plaintiff. The Court cannot know whether there is a violation to remediate with respect to other class members without first making individualized evaluations of each facility's parking lot.

Additionally, a common thread running through the various components of typicality— the requirements of similarity of legal claims, factual similarity, and absence of defenses unique to the representative—is the interest in ensuring that the class representative's interests and incentives will be generally aligned with those of the class as a whole. *See, e.g., Amchem*, 521 U.S. at 626, n. 20 (noting that "the interests of the class members will be fairly and adequately protected" if the representative's claims are adequately interrelated). Typicality is not satisfied when a class representative is subject to unique defenses which threaten to become the focus of litigation. *See Zenith Labs., Inc. v. Carter–Wallace, Inc.,* 530 F.2d 508, 512 (3d Cir. 1976).

"Where it is predictable that a major focus of the litigation will be on an arguable defense unique to the named plaintiff or a small subclass, then the named plaintiff is not a proper class representative." *In re Linerboard Antitrust Litig.*, 203 F.R.D. 197, 211 (E.D.Pa. 2001) (citing *Koos v. First Nat'l Bank*, 496 F.2d 1162, 1165 (7th Cir. 1974)).

Bob Evans argues that Mielo is subject to a number of unique defenses that would not apply to absent class members. Defendant asserts that Mielo is not a bona fide user or bona fide activist for ADA accessibility because he is a professional plaintiff who was "hired" by Plaintiff's counsel to pursue multiple litigations against stores and facilities he had no real interest in using. According to Bob Evans, Plaintiff has sued far more stores and facilities in the Western District of Pennsylvania (dozens) than he has visited its restaurants (four in his lifetime). The evidence may support the inference that Plaintiff may be a "tester." [8]

The fact that he may have been an ADA "tester" in this and numerous other cases in this district wherein he is the named plaintiff,[9] as opposed to one who uses or frequents an establishment solely to eat or shop or otherwise partake of the goods or services provided there, poses a unique, possibly disqualifying defense. *Colorado Cross Disability Coalition v. Abercrombie & Fitch Co.,* 765 F.3d 1205, 1211 (10th Cir. 2014) (discussed in context of

---

[8] An ADA 'tester' is an individual with a disability who repeatedly visits places of public accommodation with the dual motivation of verifying ADA compliance along with availing himself or herself with the goods and/or services available. *McConnell v. Canadian Pac. Hills Plaza*, 2014 WL 201102, at *1 (M.D. Pa. 2014).

[9] Mielo is the named plaintiff in approximately twenty-seven (27) separate cases filed in this District, all of which allege that the defendants are in violation of the ADA due to, *inter alia*, parking lot excessive sloping.

standing analysis).[10]  *See also Houston v. Marod Supermarkets, Inc*., 733 F.3d 1323, 1334 (11th

Cir. 2013). Whether he was a tester or not would require individualized factual inquiries, and

would stand him apart from other putative class members.

Further, a plaintiff seeking injunctive relief must show continuing, adverse effects from

the illegal conduct. *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974). A plaintiff's "some day"

intention to return to the source of the illegal conduct, without any description of concrete plans,

does not support a finding of "actual or imminent" injury. *Lujan v. Defenders of Wildlife,* 504

U.S. 555, 564 (1992); *see also  Dempsey v. Pistol Pete's Beef N Beer, LLC*, 2009 WL 3584597 at

*4 (D.N.J. Oct. 26, 2009) ("[I]ntentions to return to the source of the illegal conduct 'some day' -

without any description of concrete plans, or indeed even any specification of when the some day

will be - do not support a finding of the requisite actual or imminent injury."). Mielo's

speculative "some day" intention to return to the McKnight Road Bob Evans is insufficient to

establish the requisite "injury in fact" to support injunctive relief.

Additionally, Mielo seeks to certify a class solely as to sloping issues alleged in his

Complaint. Bob Evans asserts that Plaintiff has abandoned certain claims he raised in his

Complaint. In addition to slope barriers, the Complaint identified other barriers at some Bob

Evans stores, such as lack of van accessible spaces and inadequate markings. These barriers

have been dropped from the class definition. Courts have found a conflict of interest when the

named representative does not assert certain claims that may be available and advantageous to

---

[10]    Whether a plaintiff may satisfy the intent to return requirement if she visits the establishment solely as a tester has not been addressed head-on by the Third Circuit. *Anderson v. Macy's, Inc.*, 943 F. Supp. 2d 531, 542 (W.D. Pa. 2013) (numerous citations omitted). Plaintiff has stated a vague intention to return to the Bob Evans on McKnight Road. Nevertheless, a unique defense that might be expected to consume the named Plaintiff's attention  and distract him from pursuit of his and absent class members' claims may render the named plaintiff an inadequate representative, even where he ultimately prevails.

the absent putative class members.  *See, e.g., Pearl v. Allied Corp.*, 102 F.R.D. 921, 923-24 (E.D. Pa. 1984).[11]  *See also In re Stec Inc Securities Litigation*, 2012 WL 69653772, at *6 (C.D. Cal. March 7, 2012) ("Proposed class representatives have a conflict of interest with absent putative class members if they . . . refuse to assert certain claims that may be available and advantageous to the absent putative class members.").

The legal theory may be the same for all class members – Bob Evans' has not adopted or implemented a policy to ensure that the parking spaces and access aisles comply with the ADA or are remediated as soon as they fall out of compliance, as when the land settles or freezes.  *See Gray v. Golden Gate Nat'l Rec. Area,* 279 F.R.D. 501, 512-13 (N.D. Ca. 2011) ("Plaintiffs do not allege any uniform design plan, but instead uniform policies and practices of failing to ensure that GGNRA and various of its features and programs are accessible to mobility and vision impaired individuals as required by law"; distinguishing *Castenada*).  However, Plaintiff's factual claims do not share the core salient facts with class members of compliant facilities and are not sufficiently aligned that Plaintiff's claims may be considered typical. In this case, class members either suffered some non-compliance injury, as did Plaintiff when he visited the McKnight Road restaurant, or not. They also might have suffered an ADA injury at a pre-1992 built facility, a post-1992 facility that has been altered materially, or a post-1992 newly built facility, which must comply with the highest ADA standards, further complicating the individualized inquiry that will have to be made. Class members may face the threat of suffering such non-compliance injury in the future if a given store parking lot falls out of compliance

---

[11] The Court notes that Plaintiff did not respond to the "abandoned claims" argument raised by Defendant.

because of Bob Evans' policy and the factors it asserts are beyond its control – weather and land conditions, but any such threat is speculative.

The complying and non-complying facilities – which will not be known until individual lot-by-lot, Bob Evans by Bob Evans evaluations are made to answer the threshold question "was there a violation?" – do not share salient core facts, only an abstract legal theory about a policy that fails to ensure compliance with Bob Evans's stated policy to comply with ADA requirements. "Where an action challenges a policy or practice, 'the named plaintiffs suffering one specific injury from the practice can represent a class suffering other injuries, so long as all the injuries are shown to result from the practice.'" *Chakejian v. Equifax Info. Serv.*, 256 F.R.D. 492, 498 (E.D.Pa. 2009) (quoting *Baby Neal*, 43 F.3d at 58).

A single injunction directing Bob Evans to assess, evaluate and, if necessary, remediate any non-compliant lots to bring them into compliance with the ADA's maximum slope requirements for that property (i.e., depending on when it was built or altered) would not be applicable to <u>all</u> stores nor would it reflect the claims of all class members. The claims could not be resolved "in one stroke." "Final common injunctive relief would only be appropriate as to those stores where there are in fact accessibility violations." *Castaneda*, 264 F.R.D. at 569. Again, that inquiry turns on a highly individualized analysis of each store's parking lot.

For all these reasons, the Court finds that Mielo's individual circumstances are markedly different from that of other putative class members, which prevents the Court from finding that he has met his burden under Rule 23(a)(3).

### 4. Rule 23(a)(4):  Adequacy of Class Representation

Even assuming the requirements of Rule 23(a)(1), (2) and (3) were met, Plaintiff has not met his burden under Rule 23(a)(4).  The adequacy inquiry "has two components designed to

ensure that absentees' interests are fully pursued." *See Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 630 (3d Cir. 1996), *aff'd*, *Amchem*, 521 U.S. 591. First, the adequacy inquiry "tests the qualifications of the counsel to represent the class." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 532 (3d Cir. 2004) (internal citations omitted). Bob Evans concedes that Plaintiff's counsel are able, experienced and well qualified to handle class action litigation.

The second component of the adequacy inquiry seeks "to uncover conflicts of interest between named parties and the class they seek to represent." *Id*. There are clear similarities between the components of the typicality inquiry relating to the absence of unique defenses and alignment of interests, and this second part of the adequacy inquiry that focuses on possible conflicts of interest. "Because of the similarity of [the typicality and adequacy] inquiries, certain questions—like whether a unique defense should defeat class certification—are relevant under both." *Beck v. Maximus*, 457 F.3d 291, 296 (3d Cir. 2006). "[U]nique defenses bear on both the typicality and adequacy of a class representative." *Id*. (citing cases).

As with the typicality requirement, the adequacy requirement fails because Mielo is not able to overcome the same major obstacles.

Plaintiff's claims are antagonistic to those of absent class members utilizing or attempting to utilize Bob Evans restaurants, namely because of the substantial factual differences in the conditions of the various parking lots.[12] Mielo's claims conflict with those of other class members who may not have suffered any injury, or who encountered architectural barriers at a store built at a different time under a different standard, which would affect whether there was a

---

[12]    These factual differences could include  unique design, weather and other topological differences, and the dates when a given store was built or altered, and the fact that some stores are in compliance with the maximum slope requirements, by admission of Plaintiff's own investigators.

violation in the first instance as well as the likelihood that one single injunction would not resolve "each one of the claims in one stroke." Additionally, Mielo is subject to a number of unique defenses that would not apply to absent class members – i.e., his role as a "tester," his abandonment of certain claims. Finally, final injunctive relief is not appropriate for a 593-store class as a whole; it is only appropriate as to those stores where there are in fact statutory violations.

For these reasons, the Court finds Mielo's representation of the proposed class inadequate.

5. Rule 23(b)(2)

Finally, even assuming all the requirements of Rule 23(a) were met, Plaintiff has not met his burden under Rule 23(b). Mielo moves for certification under Rule 23(b)(2), which states that a class action may be maintained if Rule 23(a) is satisfied and if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed.R.Civ.P. 23(b)(2).

As the Court of Appeals for the Third Circuit recently summarized:

[F]or certification of a 23(b)(2) class seeking only declaratory or injunctive relief, a properly defined "class" is one that: (1) meets the requirements of Rule 23(a); (2) is sufficiently <u>cohesive</u> under Rule 23(b)(2) and our guidance in *Barnes [v. The American Tobacco Co.,* 161 F.3d 127, 143 (3d Cir. 1998)]; and (3) is capable of the type of description by a "readily discernible, clear, and precise statement of the parameters defining the class," as required by Rule 23(c)(1)(B).

*Shelton v. Bledsoe*, 775 F.3d 554, 563 (3d Cir. 2015) (emphasis added).

Any "disparate factual circumstances of class members may prevent a class from being cohesive." *Gates v. Rohm & Haas Co.*, 655 F.3d 255, 264 (3d Cir. 2011). The Court has the

discretion to deny certification in the presence of disparate factual circumstances. *Geraghty v. U.S. Parole Commission,* 719 F.2d 1199, 1205 (3d Cir. 1983). As discussed *supra*, disparate factual circumstances predominate in Mielo's request for class certification. Although the class is homogenous in the abstract – all class members are mobility disabled – further definition with reference to the 563 nationwide stores of different vintage, which may or may not comply with the ADA sloping limits, shows the lack of cohesiveness of the class.

Furthermore, the Supreme Court recently clarified that "Rule 23(b)(2) applies <u>only</u> when a single injunction or declaratory judgment would provide relief to each member of the class." *Dukes*, —— U.S. ——, 131 S.Ct. at 2557 (emphasis added). "The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful <u>only as to all of the class members or as to none of them</u>.' " *Gates,* 655 F.3d at 264 (emphasis added) (quoting *Wal-Mart*, 131 S.Ct. at 2557).

An injunction cannot simply order the defendant to obey the law. *Belitskus v. Pizzingrilli*, 343 F.3d 632, 650 (3d Cir. 2003) (citing *Public Interest Research Group of N.J., Inc. v. Powell Duffryn Terminals, Inc.,* 913 F.2d 64, 83 (3d Cir. 1990) ("Overbroad language in an injunction that essentially orders a party to obey the law in the future may be struck from the order"); *SEC v. Warren*, 583 F.2d 115, 121 (3d Cir. 1978) (affirming district court's decision to dissolve injunction that "merely require[d] defendants 'to obey the law' in the future ... a requirement with which they must comply regardless of the injunction"). Pursuant to Fed.R.Civ.P. 65(d), an injunction must specify the particular action the defendant must do or refrain from doing, and overbroad language that merely orders a defendant to obey the law must be stricken.

The injunction Plaintiff seeks is little more than "obey the law" – remediate parking lots that may have fallen out of compliance to comply with the ADA maximum sloping requirements. As Bob Evans notes, the differences and unique designs of each lot, and lack of commonality, makes it impossible to craft one injunction that remedies all injuries to the class in one stroke. Bob Evans' conduct is not such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them, nor can it answer the common question in one stroke.

As such, the putative class cannot be appropriately certified under Rule 23(b)(2).

## III.    CONCLUSION

For all of the foregoing reasons, it is respectfully recommended that Plaintiff's Motion For Class Certification (ECF No. 19) be denied and that Defendant's Motion to Strike (ECF No. 29) be granted.

Any party wishing to object to this Report and Recommendation shall file objections on or before April 6, 2015. Any party opposing the objections shall have fourteen (14) days after date of service to respond to the objections. Failure to timely file objections will constitute a waiver of any appellate rights. *Brightwell v. Lehman,* 637 F.3d 187, 193 n. 7 (3d Cir. 2011).

/s Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

Dated:  March 20, 2015

  cc:    Benjamin J. Sweet
         R. Bruce Carlson
         Carlson Lynch Sweet & Kilpela, LLP

Email: bsweet@carlsonlynch.com
Email: bcarlson@carlsonlynch.com

Melissa McCoy Gormly
Michael J. Shoenfelt
Mark A. Knueve
Vorys, Sater Seymour and Pease LLP
Email: mmgormly@vorys.com
Email: mjshoenfelt@vorys.com
Email: maknueve@vorys.com